IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| KRIS SARAYN KOLLYNS (FORMERLY #145461, A/K/A KRISTOPHER S. KOLLINS, A/K/A JOHN WAYNE TODD, A/K/A JOHNNIE W. TODD),<br><br>Plaintiff,<br><br>vs.<br><br>DR. JOSE CHAVEZ, M.D., IN HIS INDIVIDUAL CAPACITY;<br>DR. SELMAN WATSON, IN HIS INDIVIDUAL CAPACITY; AND<br>SOUTH CAROLINA DEPARTMENT OF MENTAL HEALTH,<br><br>Defendants. | ) Civil Action No. 3:05-3022-JFA-JRM<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) **REPORT AND RECOMMENDATION**<br>)<br>) |

Plaintiff filed this action under 42 U.S.C. § 1983 ("§ 1983") on October 26, 2005.[1] He has been involuntarily committed to the South Carolina Department of Mental Health ("SCDMH") as a Sexually Violent Predator ("SVP") pursuant to the South Carolina Sexually Violent Predator Act ("SVP Act"), S.C. Code Ann. § 44-48-10 et seq. Plaintiff is in the Behavioral Disorders Treatment Program. Defendants are the SCDMH; Dr. Jose Chavez ("Chavez"), a physician employed by the SCDMH to provide medical and psychiatric services to patients in the BDTP; and Dr. Selman Watson ("Watson"), a clinical psychologist and acting Director of the BDTP. Defendants filed a motion for summary judgment on January 30, 2006. Because Plaintiff is proceeding pro se, he was advised on February 22, 2006, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that

---

[1] Pretrial matters in this case were referred to the undersigned pursuant to Rule 73.02(B)(2)(e), DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the court.

a failure to respond to Defendant's motion for summary judgment with additional evidence or counter-affidavits could result in the dismissal of his complaint. On March 13, 2006, Plaintiff filed a response in opposition to Defendants' motion for summary judgment.

## DISCUSSION

Plaintiff claims that Defendants have violated his Fourteenth Amendment rights because they denied him medical treatment for a hearing loss. Complaint at 3. He requests that the court order Defendants to provide full treatment and aid to Plaintiff for his hearing loss, $100,000 in monetary damages, and punitive damages. Defendants contend that they are entitled to summary judgment because: (1) Defendants are entitled to Eleventh Amendment immunity; (2) Defendant Watson did not personally participate in decisions regarding Plaintiff's medical treatment; (3) Defendants Chavez and Watson are entitled to qualified immunity; and (4) Defendant Chavez's treatment of Plaintiff meets the applicable Fourteenth Amendment standard.

1.  Medical Claims

Plaintiff alleges that his constitutional rights have been violated because Defendants did not properly treat his hearing loss and provide him with hearing aids. Defendants contend that their conduct did not violate Plaintiff's Fourteenth Amendment rights as Plaintiff has not shown that his alleged hearing problem was a serious medical condition needing evaluation before his other complaints, he has presented no indication that his hearing condition needed evaluation, and he has not shown any substantial departure from accepted professional judgement, practice, or standards.

Involuntarily committed mental patients retain a liberty interest in conditions of reasonable care and safety and in reasonably nonrestrictive confinement conditions. Youngberg v. Romeo, 457 U.S. 307, 324 (1982). Due process requires that the conditions and duration of confinement under

the SVP Act bear some reasonable relation to the purpose for which persons are committed. See Seling v. Young, 531 U.S. 250, 265 (2001); Youngberg v. Romeo, supra. The Fourteenth Amendment ensures that states will provide not only for the medical needs of those in penal settings, but for anyone restricted by a state from obtaining medical care on his own. DeShaney v. Winnebago, 489 U.S. 189, 200 (1989); Youngberg, 457 U.S. at 324.

In deciding whether a civilly-institutionalized individual's constitutional rights have been violated, the courts must balance the individual's liberty interest against the relevant state interests, but deference must be given to the decisions of professionals. Youngberg, 457 U.S. at 321. "[T]he decision, if made by a professional, is presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." Id. at 323. Deference to professionals ensures that federal courts do not unnecessarily interfere with the internal operations of state institutions. Id. at 322.

To state a claim pursuant to the Fourteenth Amendment requires a plaintiff to provide proof of more than mere negligence in diagnosing and treating medical complaints. Patten v. Nichols, 274 F.3d 829 (4th Cir. 2001). While courts have not adopted a consistent standard, there is agreement that the professional judgment standard requires more culpability than mere negligence. Compare Yvonne L. v. New Mexico Dep't of Human Servs., 959 F.2d 883, 894 (10th Cir. 1992)(doubting whether "there is much difference" between the deliberate indifference standard and the Youngberg standard), with Doe v. New York City Dep't of Soc. Servs., 709 F.2d. 782, 790 (2d Cir. 1983)(stating that in Youngberg, "the Court adopted what is essentially a gross negligence standard"); see also Shaw v. Strackhouse, 920 F.2d 1135, 1146 (3d Cir. 1990)("Professional

3

judgment, like recklessness and gross negligence, generally falls somewhere between simple negligence and intentional misconduct.").

Plaintiff has not shown that Defendants violated the professional judgment standard. Upon Plaintiff's admission to the BDTP, a physician's history and physical were performed. Plaintiff also underwent a nursing assessment upon his admission to BDTP. Plaintiff self reported a "discriminatory hearing loss" to the physician. The physician's physical findings and diagnostic impressions failed to indicate any hearing loss. See Defendants' Ex. 3. There is no mention of hearing problems by Plaintiff nor any physical findings recorded by the evaluating nurse to suggest that any hearing problems were found during the nursing assessment.[2] Defendants' Ex. 4. In a July 14, 2004 letter to Dr. Beverly Woods, Plaintiff outlined his medical problems, but did not indicate any problems or diagnoses regarding his ability to hear. Defendants' Ex. 5. Plaintiff was provided treatment by an ear, nose, and throat physician, Dr. Thomas Glazebrook, but was dismissed by Dr. Glazebrook by letter dated February 28, 2005, due to an "unsatisfactory patient-physician relationship." Defendant's Ex. 9.

Defendant Watson states that his duties are administrative in nature; he is a clinical psychologist not a medical physician and thus is not involved in the medical decision making process regarding the evaluation, examination, and subsequent medical treatment recommendations for those clients within the BDTP; and he relied on the professional judgment of Plaintiff's medical providers as to evaluations and treatments regarding Plaintiff's medical complaints. He further states that because of Plaintiff's underlying personality and psychiatric disorders that Plaintiff has

---

[2]Plaintiff, in his opposition memorandum, claims that Defendants failed to submit all of his intake medical records. Plaintiff has not (despite a period of discovery) submitted any further medical records to dispute this.

4

at times been uncooperative in the ongoing evaluation of his multiple medical problems. Watson Aff., Paras. 2-3.

Dr. Chavez states that later in 2005 he became aware of Plaintiff's subjective complaints regarding his hearing. He reviewed Plaintiff's medical record and found no objective findings of hearing problems based on previous medical assessments and he had no knowledge of any staff members observing Plaintiff's alleged hearing difficulties. Based on Plaintiff's subjective complaints, Dr. Chavez ordered an audiology consultation on December 1, 2005. Chavez Aff., Paras. 5-6; Defendants' Ex. 10. Plaintiff is a veteran who receives disability benefits through the Veterans Administration ("VA"). According to Dr. Chavez, this makes Plaintiff eligible for health care through the VA. Chavez Aff., Para. 7; Defendants' Ex. 11. Dr. Chavez states that Plaintiff told him that he wished to be evaluated for his hearing and other medical conditions through the VA Hospital. In January 2006, Dr. Chavez wrote orders for Plaintiff to have appointments scheduled with the VA to have Plaintiff's hearing and other problems evaluated through the VA. Chavez Aff., Para. 7.[3]

---

[3]In his memorandum in opposition to summary judgment, Plaintiff complains that he cannot go to the VA because Defendants have required him to be shackled when he transported to the VA. He alleges that the VA will not treat him if he is shackled, but has provided no evidence to support this allegation.

Plaintiff has not denied that he himself requested to be treated at the VA, rather than through the SCDMH. Instead, he requests that the Court find that for the SCDMH to charge him for hearing aids is a violation of S.C. Code §§ 44-48-170 and 44-23-1110. First, this claim was not alleged in the Complaint and does not appear to be properly before the Court. Second, Plaintiff has not shown that he has a need for hearing aids or that he has been charged for hearing aids. Further, § 44-48-170 merely provides that the involuntary detention or commitment of a person pursuant to the SVP act "must conform to constitutional requirements for care and treatment." S.C. Code Ann. § 44-48-170. As discussed above, Plaintiff fails to show that the care provided for his alleged hearing problem violated his Fourteenth Amendment rights. Section 44-23-1110 provides:

The Department of Mental Health shall establish the charges for maintenance and

(continued...)

2. <u>Immunity</u>

Defendant SCDMH contends that it is entitled to Eleventh Amendment immunity. Defendants Chavez and Watson contend that they are entitled to Eleventh Amendment immunity to the extent that Plaintiff is suing them in their official capacities. When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state. In the case of <u>Will v. Michigan Department of State Police</u>, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated,

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity [cites omitted] or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

<u>Id.</u> at 66.

---

[3](...continued)
medical care for patients, other than beneficiary, of State mental health facilities. These charges shall be based upon the per capita costs per day of the services rendered, which may include costs of operation, costs of depreciation, and all other elements of cost, which may be adjusted from time to time as the Department of Mental Health considers advisable. It shall establish a reasonable scale of fees to be charged patients, other than beneficiary, served by the mental health clinics and shall retain these fees for use in defraying the expenses of the clinics.

S.C. Code Ann. § 44-23-1110. It is unclear whether this provision applies to SVPs. If it did, however, it does not appear that this supports Plaintiff's assertion, as the statute appears to authorize charges in certain situations.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments, and officials are entitled to the Eleventh Amendment immunity. Id. at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself and, therefore, against the state. State officials may only be sued in their individual capacities. Therefore, Defendants are entitled to Eleventh Amendment immunity from monetary damages in their official capacities.

Defendants Chavez and Watson also contend that they are entitled to qualified immunity in his individual capacity. The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by qualified immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Harlow, 457 U.S. at 818.

The Court of Appeals for the Fourth Circuit has stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

7

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994)(internal citations omitted), cert. denied, 516 U.S. 824 (1995).  As discussed above, Plaintiff fails to show that Defendants Chavez and Watson violated any of his clearly established constitutional or statutory rights.  Therefore, Defendants Chavez and Watson are entitled to qualified immunity in their individual capacities.

       3.      State Law Claims

It is unclear whether Plaintiff is asserting any claims under South Carolina law.  As Plaintiff fails to show that Defendants violated his rights under § 1983 (as discussed above), it is recommended, pursuant to 28 U.S.C. § 1367(c)(3), that any state law claims be dismissed.

### CONCLUSION

Based on review of the record, it is recommended that Defendants' motion for summary judgment (Doc. 13) be granted.

          Respectfully submitted,

          s/Joseph R. McCrorey
          United States Magistrate Judge

July 25, 2006
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

<u>Notice of Right to File Objections to Magistrate Judge's Report and Recommendation</u>
<u>&</u>
<u>The Serious Consequences of a Failure to Do So</u>

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within ten (10) days of the date of its filing. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. Based thereon, this Report and Recommendation, any objections thereto, and the case file will be delivered to a United States District Judge fourteen (14) days after this Report and Recommendation is filed. <u>Advance Coating Technology, Inc. v. LEP Chemical, Ltd.</u>, 142 F.R.D. 91, 94 & n. 3 (S.D.N.Y. 1992). A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. See <u>Mathews v. Weber</u>, 423 U.S. 261, 270-271 (1976); and <u>Estrada v. Witkowski</u>, 816 F. Supp. 408, 410 (D.S.C. 1993).

During the ten-day period, <u>but</u> <u>not</u> <u>thereafter</u>, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he wishes the United States District Judge to consider any objections. Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections. Failure to file written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. See <u>United States v. Schronce</u>, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, <u>Schronce v. United States</u>, 467 U.S. 1208 (1984); and <u>Wright v. Collins</u>, 766 F.2d 841, 845-47 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. <u>Howard v. Secretary of HHS</u>, 932 F.2d 505, 508-509 (6th Cir. 1991). See also <u>Praylow v. Martin</u>, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In <u>Howard</u>, *supra*, the Court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* <u>Lockert v. Faulkner</u>, 843 F.2d 1015, 1017-19 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

<u>See</u> also <u>Branch v. Martin</u>, 886 F.2d 1043, 1046 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and <u>Goney v. Clark</u>, 749 F.2d 5, 7 n. 1 (3rd. Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review"). This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections. See <u>Wright</u>, *supra*,; and <u>Small v. Secretary of HHS</u>, 892 F.2d 15, 16 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing addressed as follows:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201
